IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

v.                                                               Civil Action No. 3:16cv674

**LEWIS F. CARTER, et al.**

    **Defendants.**

## MEMORANDUM OPINION

This matter comes before the Court on the Defendants Lewis F. Carter ("Carter"), Mary Carter ("Mary"), and Bobby Carter's ("Bobby") (collectively, "the Carters"), all proceeding *pro se*,[1] multiple pending motions to dismiss purportedly brought under Federal Rules of Civil Procedure 12(b)(1),[2] 12(b)(2),[3] 12(b)(6),[4] and 12(h)(3)[5] (collectively, the "Motions to Dismiss"), (ECF Nos. 7, 8, 9, 18); the Carters' Motion to "Take Judicial Notice of Law" (the "Judicial Notice Motion"), (ECF No. 17); the United States' Motion for Summary Judgment, (ECF No. 21); the Carters' "Demand for Due Process Hearing" (the "Due Process Demand"), (ECF No.

---

[1] "District courts have a duty to construe *pro se* pleadings liberally." *Blankenship v. Am. Fed. Gov't Empls.*, No. 3:15cv294, 2016 WL 1276425, at *2 (E.D. Va. Mar. 30, 2016) (citing *Bracey v. Buchanan*, 55 F. Supp. 2d 416, 421 (E.D. Va. 1999)).

[2] "[A] party may assert the following defense[ ] by motion: (1) lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1).

[3] "[A] party may assert the following defenses by motion: . . . lack of personal jurisdiction . . . ." Fed. R. Civ. P. 12(b)(2).

[4] Rule 12(b)(6) provides that a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

[5] Rule 12(h)(3) states that "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

29); and, the Carters' "Second Demand for Due Process Hearing" (the "Second Due Process Demand"), (ECF No. 35).

The United States responded to the Carters' first three motions to dismiss. (ECF No. 12.) The Carters did not reply, and the time to do so has expired. The United States did not respond to the Carters' fourth-filed motion to dismiss, the Carters' Judicial Notice Motion, the Carters' Demand for Due Process Hearing, or the Carters' Second Due Process Demand, and the time to do so has expired. The Carters responded to the United States' Motion for Summary Judgment, (ECF Nos. 25, 26, 27), and the United States replied, (ECF No. 31.) The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. Accordingly, all matters are ripe for disposition. The Court exercises jurisdiction pursuant to 28 U.S.C. §§ 1340[6] and 1345,[7] 26 U.S.C. § 7402(a),[8] and 26 U.S.C. § 7403.[9]

For the reasons that follow, the Court will: (1) deny the Carters' Motions to Dismiss; (2) deny as moot the Carters' Judicial Notice Motion; (3) deny without prejudice the United States'

---

[6] "The district courts shall have original jurisdiction of any civil action arising under any Act of Congress providing for internal revenue, or revenue from imports or tonnage except matters within the jurisdiction of the Court of International Trade." 28 U.S.C. § 1340.

[7] "Except as otherwise provided by Act of Congress, the district courts shall have original jurisdiction of all civil actions, suits[,] or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress." 28 U.S.C. § 1345.

[8] Section 7402(a) provides, in relevant part: "The district courts of the United States at the instance of the United States shall have such jurisdiction . . . to render such judgments and decrees as may be necessary or appropriate for the enforcement of the internal revenue laws." 26 U.S.C. § 7402(a).

[9] Section 7403 allows "a civil action to be filed in a district court of the United States to enforce the lien of the United States . . . or to subject any property . . . of the delinquent, or in which he [or she] has any right, title, or interest, to the payment of such tax or liability." 26 U.S.C. § 7403(a).

Motion for Summary Judgment; and, (4) deny as moot the Carters' Due Process Demand and Second Due Process Demand.

## I. Factual and Procedural Background

### A. Factual Background

This case arises from the United States' efforts to collect eleven years of unpaid taxes, penalties, and interest from Carter. On March 16, 2015, the United States filed a complaint to reduce to judgment tax assessments for the tax years 1997–2000, 2002–2006, and 2008–2009. *United States v. Lewis Carter*, No. 3:15cv161, 2015 WL 9593652 (E.D. Va. Dec. 31, 2015) ("*Carter I*"). On December 31, 2015, the Court granted summary judgment for the United States on Carter's tax liabilities. (*Carter I*, Final O. 1, ECF No. 56.) On January 14, 2016, the Court entered an amended order that Carter's unpaid federal tax debt, "in the amount of $309,718.95, as of January 5, 2015, plus statutory additions accruing thereafter until paid," be entered against Carter. (*Carter I*, Amended O. 2, ECF No. 75.)

After the final judgment was entered against him, Carter peppered the Court with a number of filings. *See United States v. Carter*, No. 3:15cv161, 2016 WL 1752761, at *1 n.1 (E.D. Va. Apr. 29, 2016) (listing the "twenty-one filings before the Court," including "two Motions to Alter or Amend a Judgment . . . and a Motion to Void the Order of the Court"). Carter also appealed the Court's grant of summary judgment and denial of his "multiple postjudgment motions," and on October 20, 2016, the United States Court of Appeals for the Fourth Circuit affirmed in an unpublished per curiam decision. *United States v. Carter*, 669 F. Appx. 682 (4th Cir. 2016).

On August 15, 2016, the United States filed the instant Complaint, seeking to "foreclose the federal tax liens against certain real properties with respect to Lewis Carter's tax and penalty

3

liabilities" for the tax years 1997–2000, 2002–2006, and 2008–2009. (Compl. ¶ 1, ECF No. 1.) The United States joined as defendants Mary, Bobby, and the Virginia Department of Taxation (the "VDOT"). The United States joined Mary and Bobby because it believed both Mary and Bobby may "own an interest in one of the properties" on which the United States seeks to foreclose. (Compl. ¶¶ 5, 6.) The United States joined the VDOT because it believed the VDOT "may claim an interest in the real properties . . . by virtue of a state tax lien" on which the United States seeks to foreclose. (Compl. ¶ 7.)

In its Complaint, the United States alleges that, after the Court's grant of summary judgment in the prior case, federal tax liens attached to three real properties in which Carter held an interest. The United States seeks to foreclose on the following three properties, all of which are located in Westmoreland County, Virginia: (1) a property located at 1807 Oldhams Road, Hague, Virginia (the "Oldhams Road Property"); (2) 0.17 acres, which became part of the Oldhams Road Property (the "Oldhams Road Addition"); and, (3) five additional parcels of property identified only by tax map identification numbers, (the "Five Parcels").

According to the Complaint, Carter and Mary acquired the Oldhams Road Property as tenants by the entireties on August 4, 1988.[10] Carter and Mary acquired the Oldhams Road Addition as tenants by the entireties on July 9, 1997. And Carter and Bobby acquired the Five Parcels as joint tenants via bequest from Laxter Carter when he died on October 30, 2007.

---

[10] The Complaint states that Lewis and Mary acquired the Oldhams Road Property "[o]n or about October 21, 1988." (Compl. ¶ 13.) However, the deed attached to the Complaint has a date of August 4, 1988. Other dates in the Complaint similarly conflict with the dates on the attached deeds. (*Compare* Compl. ¶¶ 14, 15, *with* Exhibits B, C.) The Court need not address any implications of the inconsistent record for purposes of this decision, and simply observes that the dates in the exhibits prevail. *See Fayetteville Inv'rs*, 936 F.2d at 1465 ("[I]n the event of conflict between the bare allegations of the complaint and any attached exhibit . . . , the exhibit prevails.").

4

The United States avers that it "is entitled to foreclose the foregoing tax liens, sell the real properties, and distribute the proceeds in accordance with the rights of the parties determined herein, with the amounts attributable to Lewis Carter's interest to be paid to the United States and applied against his federal tax liabilities." (Compl. ¶ 18.) The United States seeks judgment that it "has valid and subsisting federal tax liens . . . and rights to . . . the real properties described" in the Complaint, (Compl. ¶ A), and asks the Court to order that the federal tax liens attach to the properties, that the properties be foreclosed and sold, and that the proceeds of the sale "be distributed in accordance with the rights of the parties determined herein, with the amounts attributable to Lewis Carter's interest to be paid to the United States and applied against his federal income tax liabilities." (Compl. ¶ B.)

B.  **Procedural Background**

On August 15, 2016, the United States filed its Complaint, seeking to "foreclose the federal tax liens against certain real properties with respect to Lewis Carter's tax and penalty liabilities" for the tax years 1997–2000, 2002–2006, and 2008–2009, and joining Mary, Bobby, and the VDOT. (Compl. 1, ¶¶ 4–7.) The Carters jointly filed three motions to dismiss,[11] and the United States responded to those three motions in one filing. The Carters then filed four motions asking the Court to take judicial notice of the Constitution, the Federal Rules of Evidence, and several decisions of the Supreme Court of the United States. (*See* ECF Nos. 10, 11, 13, 14.) The Court denied those motions as moot. (Mem. O., ECF No. 16.) After the United States filed its

---

[11] The three motions to dismiss, with all punctuation, capitalization, and emphasis in originals, were titled as follows: (1) "Defendant's Motion to Dismiss for Lack of subject-matter Jurisdiction of the District Court under IRC § 7402, Over the Enforcement of Title 26 Law" (the "First Motion to Dismiss"); (2) "Defendant's Motion to Dismiss for Lack of *subject-matter* Jurisdiction" (the "Second Motion to Dismiss"); and, (3) "DEFENDANT'S MOTION TO DETERMINE THE *subject-matter jurisdiction* OF THE COURT" (the "Third Motion to Dismiss").

5

response to their first three motions to dismiss, the Carters filed a fourth motion to dismiss.[12] On that same day, the Carters filed the Judicial Notice Motion, titled "Motion to Take Judicial Notice of Law in the District Court's Own Decision, Just Previously Taken in Case No: 3:15-cv-161." The United States did not respond to either the Fourth Motion to Dismiss or the Judicial Notice Motion.

Before the Court ruled on the Carters' motions to dismiss and before discovery commenced, the United States filed a Motion for Summary Judgment.[13] This motion prompted another flurry of filings by the Carters. Specifically, the Carters filed: (1) "Defendant's Objection and Motion to Strike;" (2) "Defendant's Second Objection to Plaintiff's Motion for Summary Judgment;" (3) "Defendant's Third Objection to Plaintiff's Motion For Summary Judgment For Failure To Establish the Subject-Matter Jurisdiction Of the District Court;" (4) "Defendant's *DEMAND* For *due process* Hearing;" and, (5) "Defendant's Demand for Trial by Jury," (ECF No. 30). The United States responded to the Carters' objections and motions to strike, and the Carters' jury demand, (ECF No. 32).

## II. Analysis: Motions to Dismiss

The gravamen of the Carters' Motions to Dismiss is that the Court lacks jurisdiction to order the enforcement of federal income taxes. The Carters also argue that the Court cannot

---

[12] This motion was titled, with all capitalization and emphasis in original, "Defendant's Objection, Reply, and Motion to Dismiss For Lack of *subject-matter jurisdiction* of the District Court under IRC § 7402 & 7608(a) over the Enforcement of Title 26 Law as a Direct Tax Without Apportionment, and for Forgery under IRC §§ 6321 and 7403," (the "Fourth Motion to Dismiss").

[13] The United States provided the Carters with appropriate notice pursuant to *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975). (*See* ECF Nos. 23, 24.)

6

exercise personal jurisdiction over Mary and Bobby because they were not parties to the previous action.[14] The Court will analyze each issue separately.

### A. Analysis: Motion to Dismiss for Lack of Subject-Matter Jurisdiction

#### 1. Legal Standard

In a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) challenging the Court's subject-matter jurisdiction, the burden rests with the plaintiff, as the party asserting jurisdiction, to prove that federal jurisdiction is proper. *See Int'l Longshoremen's Ass'n v. Va. Int'l Terminals, Inc.*, 914 F. Supp. 1335, 1338 (E.D. Va. 1996) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)). A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) can attack subject-matter jurisdiction in two ways. First, a Rule 12(b)(1) motion may attack the complaint on its face, asserting that the complaint fails to state a claim upon which subject-matter jurisdiction can lie. *See Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338; *see also Adams*, 697 F.2d at 1219. In such a challenge, a court assumes the truth of the facts alleged by plaintiff, thereby functionally affording the plaintiff the same procedural protection he or she would receive under Rule 12(b)(6)[15] consideration. *See Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338; *see also Adams*, 697 F.2d at 1219.

---

[14] Although the Carters reference Federal Rule of Civil Procedure 12(b)(6), their only substantive arguments are challenges to the Court's subject-matter jurisdiction and exercise of personal jurisdiction over Mary and Bobby. As such, the Court will analyze the Motions to Dismiss on those two grounds only.

[15] "A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the

A Rule 12(b)(1) motion may also challenge the existence of subject-matter jurisdiction in fact, apart from the pleadings. *See Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991); *Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338; *see also Adams*, 697 F.2d at 1219. In such a case, because a party challenges the court's "'very power to hear the case,'" the trial court is free to weigh evidence to determine the existence of jurisdiction. *Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338 (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). No presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. *See Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338; *see also Adams*, 697 F.2d at 1219.

If the facts necessary to determine jurisdiction intertwine with the facts central to the merits of the dispute, a court should find that jurisdiction exists and resolve any factual dispute on the merits because the jurisdictional attack would then closely mirror a challenge on the merits. *United States v. North Carolina*, 180 F.3d 574, 580 (4th Cir. 1999); *Adams*, 697 F.2d at 1219. A court need not examine jurisdiction in that manner when a plaintiff asserts the claim solely for the purpose of obtaining jurisdiction or when a plaintiff raises a wholly insubstantial and frivolous claim. *Bell v. Hood*, 327 U.S. 678, 682–83 (1946).

2. **The Carters' Arguments**

The Carters raise many of the same arguments against subject-matter jurisdiction that Carter previously raised in *Carter I*. *See, e.g., United States v. Carter*, No. 3:15cv161, 2015 WL

---

plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

8

9593652, at *4–6 (E.D. Va. Dec. 31 2015) (discussing Carter's arguments that the Court lacks jurisdiction), *aff'd*, 669 F. App'x 682 (2016). In the Motions to Dismiss, the Carters argue that the United States lacks the constitutional power to levy or enforce a direct income tax. The Carters assert that the "court strips itself of all *subject-matter jurisdiction* that it may lawfully establish and take over the entire civil action under the statute claimed to enforce the *direct* tax imposed in *practice* by the IRS'[s] *defacto* operations outside of any true statutory authority." (First Mot. Dismiss ¶ 17, ECF No. 7.) The essence of the Carters' argument that the Court lacks subject-matter jurisdiction is that

> [t]he enforcement by the federal courts of the practiced (and argued) *direct* taxation of the American people, is still prohibited and is constitutionally <u>unenforceable</u> in the federal courts under the extant prohibitions and mandates of Article I, Section 2, clause 3, and Article I, Section 9, clause 4 of the U.S. Constitution which prohibit direct taxation. The 16th Amendment does not remove these limitations on direct taxation.

(First Mot. Dismiss ¶ 24, ECF No. 7.)

The Carters further aver that "there are two separate and distinct conflicting *lines of constitutional authority* that are being used in the federal courts with respect to the enforcement of the federal personal income tax." (Third Mot. Dismiss ¶ 4, ECF No. 9.) The Carters assert that the "new *line of authority* established by the [c]ircuit [c]ourts declares that the *subject-matter jurisdiction* of the court over the enforcement of the federal personal income tax is based on a *direct* tax under the 16th Amendment, not an *indirect* tax under Article I, as was plainly and clearly held by the Supreme Court in its controlling decisions." (Third Mot. Dismiss ¶ 13, ECF No. 9.) As such, the Carters distinguish between direct taxes and indirect taxes and claim that Federal Rule of Civil Procedure 12(b)(1) proves a "complete lack of *subject-matter jurisdiction* of the district court to enforce direct taxation under the 16th Amendment against an individual *person*, as opposed to one of the fifty states." (Second Mot. Dismiss ¶ 1, ECF No. 8.) The

Carters assert that federal courts do not have the subject-matter jurisdiction to enforce a "*direct unapportioned* tax on *income*," (Second Mot. Dismiss ¶ 5, ECF No. 8), and that the Sixteenth Amendment lacks "any *enabling enforcement clause*," (ECF No. 8 ¶ 3). The Carters also object to how the income tax was "administratively imposed on the Defendant in this case through the *defacto* operational practices of the IRS." (Second Mot. Dismiss ¶ 8, ECF No. 8.)

Finally, the Carters challenge the "enforcement of unlawful seizures made by the Revenue Agents and officers" arguing that the officers forged the "Federal Notices of Tax Liens." (Fourth Mot. Dismiss ¶¶ 1–2, ECF No. 18.) The Carters assert that the "forgeries" "strip[] this court of any alleged subject-matter jurisdiction." (Fourth Mot. Dismiss ¶ 2, ECF No. 18.) The Carters accuse the Court of

> favoritism to the Plaintiff united [sic] States at every step of these judicial proceedings, turning a blind eye to factual reality, ignoring obvious fraud and forgery, denying appearance and legal *due process* to "*railroad*" the Defendants with *star-chamber* like proceedings that blatantly violate the constitutional limitations, and clear statutory grants of coinciding limited authorities.

(Fourth Mot. Dismiss ¶ 50, ECF No. 18.)

In all, the Carters filed over 150 pages of argument and authorities in support of the Motions to Dismiss. For the reasons discussed below, none of the Carters' jurisdictional arguments have merit.

### 3. The United States Can Enforce a Validly Imposed Federal Income Tax by Foreclosing a Lien on Real Property Owned by the Delinquent Taxpayer

Notwithstanding the Carters' numerous arguments to the contrary, the United States has authority to impose and collect a federal income tax. "The law is clear that the income tax as applied by the IRS is legal and constitutional." *United States v. Bartrug*, 777 F. Supp. 1290, 1292 (E.D. Va. 1991) (citations omitted), *aff'd*, 976 F.2d 727 (4th Cir. 1992). "[T]he United States Supreme Court has consistently interpreted the federal income tax for [now almost 100]

years. Since 1916, the [Supreme] Court has construed the tax as an indirect tax authorized under Article I, Section 8, Clause I of the [United States] Constitution, as amended by the Sixteenth Amendment." *United States v. Melton*, No. 94-5535, 1996 WL 271468, at *2 (4th Cir. May 22, 1996) (citing *Brushaber v. Union Pac. R.R. Co.*, 240 U.S. 1, 11, 16–19 (1916)).[16] "[T]he debate over whether the income tax is an excise tax or a direct tax is irrelevant to the obligation of citizens to pay taxes and file returns." *Id.* (citation omitted). "Furthermore, the duty to file returns and pay income taxes is clear." *Id.* at *3 (citing and describing pertinent sections of the Internal Revenue Code). That duty "is 'manifest on the face of the statutes, without any resort to IRS rules, forms or regulations.'" *Id.* (quoting *United States v. Bowers*, 920 F.2d 220, 222 (4th Cir. 1990)). Plainly, the Carters' objections to the United States' authority to impose and collect a federal income tax lacks merit.

The United States also has the authority to enforce a lien for the nonpayment of tax by forcing the sale of real property in which a delinquent taxpayer holds an interest. 26 U.S.C. § 7403(a).[17] "The statutory language [in Section 7403] authorizing the tax lien 'is broad and

---

[16] The Carters rely heavily on *Brushaber* in arguing that the federal income tax is unconstitutional. (*See, e.g.*, Second Mot. Dismiss ¶¶ 10–18, ECF No. 9.) *Brushaber*, however, *affirms* the constitutionality of the federal income tax—in direct contrast to the Carters' arguments. *See, e.g., Melton*, 1996 WL 271468, at *2.

[17] Section 7403 governs actions to enforce liens or to subject property to payment of tax. Section 7403(a) provides, in relevant part:

> In any case where there has been a refusal or neglect to pay any tax, or to discharge any liability in respect thereof, whether or not levy has been made, the Attorney General or his [or her] delegate, at the request of the Secretary, may direct a civil action to be filed in a district court of the United States to enforce the lien of the United States under this title with respect to such tax or liability or to subject any property, of whatever nature, of the delinquent, or in which he has any right, title, or interest, to the payment of such tax or liability.

26 U.S.C. § 7403(a).

reveals on its face that Congress meant to reach every interest in property that a taxpayer might have.'" *United States v. Craft*, 535 U.S. 274, 283 (2002) (quoting *United States v. Nat'l Bank of Commerce*, 472 U.S.713, 719–20 (1985)). Section 7403 "contemplate[s], not merely the sale of the delinquent taxpayer's own interest, but the sale of the entire property (as long as the United States has any 'claim or interest' in it), and the recognition of third-party interests through the mechanism of judicial valuation and distribution." *United States v. Rodgers*, 461 U.S. 677, 694 (2002). Thus, the district court may order the sale of a property with an attached federal tax lien even if that property's ownership is shared by third parties or people other than the delinquent tax-payer. *Id.*

### 4. This Court Has Jurisdiction to Hear the United States' Claim

The Carters' claims that this Court lacks subject-matter jurisdiction do not withstand scrutiny. At least four statutes confer jurisdiction on this Court: (1) 28 U.S.C. § 1340; (2) 28 U.S.C. § 1345; (3) 26 U.S.C. § 7402; and, (4) 26 U.S.C. § 7403.

The first statute, 28 U.S.C. § 1340, grants federal district courts "original jurisdiction of any civil action arising under any Act of Congress providing for internal revenue." 28 U.S.C. § 1340. Thus, the United States' claims regarding Carter's unpaid federal income tax assessments and penalties squarely fall within the "original jurisdiction" described in 28 U.S.C. § 1340. The second statute, 28 U.S.C. § 1345, provides this Court with "original jurisdiction of all civil actions, suits or proceedings commenced by the United States." 28 U.S.C. § 1345. The United States is the plaintiff in this case and "commenced" these proceedings against the Carters and VDOT. Therefore, Section 1345 serves as a basis for this Court to exercise subject-matter jurisdiction. Third, 26 U.S.C. § 7402 grants a federal district court "jurisdiction to . . . render . . . judgments and decrees as may be necessary or appropriate for the enforcement of the internal

revenue laws." 26 U.S.C. § 7402(a). The remedy that the United States seeks here, a forced sale of Carter's properties to satisfy his long overdue tax debt, is clearly "necessary or appropriate" to "enforce[]" the internal revenue laws of the United States.[18] Finally, 26 U.S.C. § 7403 allows "a civil action to be filed in a district court of the United States to enforce the lien of the United States ... or to subject any property ... of the delinquent, or in which he [or she] has any right, title, or interest, to the payment of such tax or liability." 26 U.S.C. § 7403(a). The United States seeks in this case to enforce a lien by foreclosing on property in which Carter has an interest. Accordingly, no doubt exists that this Court has subject-matter jurisdiction over this case.

The Court will deny the Carters' Motions to Dismiss to the extent they argue that the Court lacks subject-matter jurisdiction over this case.

### B. Analysis: Motion to Dismiss for Lack of Personal Jurisdiction

#### 1. Legal Standard

"When personal jurisdiction is properly challenged under Rule 12(b)(2), the jurisdictional question is to be resolved by the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003). When a district court considers a challenge to personal jurisdiction without conducting an evidentiary hearing, the plaintiff need only make a prima facie showing of personal jurisdiction, rather than show jurisdiction by a preponderance of the evidence. *Id.*; *Combs v. Bakker*, 886 F.2d 673, 676 (4th

---

[18] As stated earlier, the United States has a right to take properties to satisfy a tax lien, even when the deed to the property is held by tenancy in the entirety, because federal law supersedes state laws governing property. *See Craft*, 535 U.S. 274 (holding that property held as tenancy by the entirety still constituted "property" to which a federal tax lien could attach); *see also Rodgers*, 461 U.S. 677 (holding that the federal government has a right to take property that a delinquent taxpayer has an interest in, even when innocent parties retain an interest in the same property, as long as the non-delinquent interested party receives a portion of the proceeds of the forced sale).

Cir. 1989). "The [C]ourt, in deciding whether a plaintiff has met this burden, must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Brooks v. Motsenbocker Advanced Devs., Inc.*, 242 F. App'x 889, 890 (4th Cir. 2007) (citing *Combs*, 886 F.2d at 676). "If a plaintiff makes the requisite showing, the defendant then bears the burden of presenting a 'compelling case,' that, for other reasons, the exercise of jurisdiction would be so unfair as to violate due process." *Reynolds Foil, Inc. v. Pai*, No. 3:09cv657, 2010 WL 1225620, at *1 (E.D. Va. Mar. 25, 2010) (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 477–78 (1985)). "For purposes of the motion to dismiss, the reviewing court may presume that any uncontradicted evidence submitted by either party is true." *Id.*

Federal courts exercise personal jurisdiction in the manner provided by state law. *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 (4th Cir. 2005). Therefore, a district court must first decide whether Virginia state law permits the court to exercise personal jurisdiction over the defendant, and second, whether the exercise of such jurisdiction comports with the due process requirements of the Fourteenth Amendment. *Id.*; *Christian Sci. Bd. of Dirs. of the First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001); *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 622 (4th Cir. 1997). "Because Virginia's long-arm statute extends personal jurisdiction to the extent permitted by the Due Process Clause, 'the statutory inquiry necessarily merges with the constitutional inquiry, and the two inquiries essentially become one.'" *Young v. New Haven Advocate*, 315 F.3d 256, 261 (4th Cir. 2002) (quoting *Stover v. O'Connell Assocs., Inc.*, 84 F.3d 132, 135–36 (4th Cir. 1996)) (internal citation omitted). Accordingly, the inquiry becomes whether the defendants maintain sufficient minimum contacts with the forum state so as not to offend "'traditional notions of fair

play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

Federal Rule of Civil Procedure 4(k)(1)(A) establishes personal jurisdiction over a defendant through proper service or proper waiver of service of summons when the defendant is "subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(k)(1)(A). In a federal court, a defendant must be "served process according to law and the exercise of jurisdiction [that] is consistent with Due Process." *United States v. Jackson*, No. 1:12cv1075, 2013 WL 6989404, at * 2 (E.D. Va. Aug. 5, 2013) (citing *Omni Capital Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 104–05 (1987) (noting that "a federal court normally looks either to a federal statute or to the long-arm statute of the state in which it sits to determine whether a defendant is amenable to service, a prerequisite to its exercise of personal jurisdiction")), *report and recommendation adopted*, 2013 WL 6073515 (E.D. Va. Nov. 18, 2013). Furthermore, Virginia law allows a court in Virginia to exercise personal jurisdiction over a defendant who is properly served with process in Virginia. *Id.* (citing *Blackson v. Blackson*, 579 S.E.2d 704, 711 (Va. App. 2003)). Finally, a court located in Virginia may exercise personal jurisdiction over a defendant who owns real property in Virginia so long as the cause of action arises out of the defendant's property interest. Va. Code § 8.01-328.1(A)(6); *Jackson*, 2013 WL 6989404, at * 3.

### 2. The Court Has Personal Jurisdiction Over All Defendants

The Carters aver that the Court lacks personal jurisdiction over Mary and Bobby because the Court cannot enforce a judgment "against multiple, previously uninvolved defendants." (Fourth Mot. Dismiss ¶ 21, ECF No. 18.) This argument fails.

Section 7403 authorizes the sale of property in which a delinquent taxpayer holds an interest and directs that "[a]ll persons having liens upon or claiming any interest in the property involved in such action shall be made parties thereto." 26 U.S.C. § 7403(b). "The statutory language authorizing the tax lien 'is broad and reveals on its face that Congress meant to reach every interest in property that a taxpayer might have.'" *Craft*, 535 U.S. at 283 (quoting *Nat'l Bank of Commerce*, 472 U.S. at 719-20.) Section 7403 "contemplate[s], not merely the sale of the delinquent taxpayer's own interest, but the sale of the entire property (as long as the United States has any 'claim or interest' in it), and the recognition of third-party interests through the mechanism of judicial valuation and distribution." *Rodgers*, 461 U.S. at 694 (2002). Thus, a federal district court may order the sale of a property with an attached federal tax lien even if that property's ownership is shared by third parties, or people other than the delinquent tax-payer. *Id.*

Although Mary and Bobby are not delinquent taxpayers, the United States alleges that they both have ownership rights in a property in which Carter possesses an interest. Mary and Carter own both the Oldhams Road Property, and the Oldhams Road Addition, as tenants by the entireties. Bobby and Carter own the Five Parcels as joint tenants. All three of these properties are located in Virginia, in Westmoreland County. Moreover, Bobby, Mary, and Carter were served properly according to Rule 4(K)(1)(a). Finally, Bobby, Mary, and Carter all own land in Virginia. Thus, for all these reasons, the Court has personal jurisdiction over Mary, Bobby, and Carter.[19]

---

[19] VDOT does not challenge the Court's exercise of personal jurisdiction over it. Thus, even assuming that the Court did not have a basis for exercising personal jurisdiction over VDOT when the United States filed the claim, VDOT waived any such defense by filing an answer. *See* Fed. R. Civ. P. 12(h)(1) ("A party waives any defense [of, *inter alia*, lack of personal jurisdiction] by . . . failing to . . . make it by motion under this rule . . . .").

The Court will deny the Carters' Motions to Dismiss to the extent they argue that the Court lacks personal jurisdiction over Bobby, Mary, or Carter.

### III. Analysis: The United States' Motion for Summary Judgment

On June 13, 2017, before the Court had ruled on the Carters' Motions to Dismiss and before discovery had commenced, the United States filed its Motion for Summary Judgment. The United States asserts that "no genuine disputes of material fact exist and the United States is entitled to judgment as a matter of law." (Mem. Supp. Mot. Summary J. 1, ECF No. 22.) However, "[s]ummary judgment may only be entered after 'adequate time for discovery.'" *Temkin v. Frederick Cty. Com'rs*, 945 F.2d 716, 719 (4th Cir. 1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)); *see also Aiken v. Policy Mgmt. Sys. Corp.*, 13 F.3d 138, 139 (4th Cir. 1993) (per curiam) (reversing district court's grant of summary judgment because "the case was not ripe for summary judgment," and remanding the case for "further development of the record"). No time for discovery has been allotted in this case because the Carters' Motions to Dismiss have remained pending. Accordingly, the Court will deny without prejudice the United States' Motion for Summary Judgment.

### IV: Analysis: The Carters' Additional Motions

#### A. The Carters' Judicial Notice Motion

The Carters ask the Court to "take Judicial Notice of Law in the district court's own decision on the constitutional nature of the federal income tax." (Mot. Judicial Notice ¶ 1, ECF No. 17.) The Carters ask the Court to take judicial notice of "[l]aw in the district court's own decision . . . just taken in Case No.: 3:15-cv-161, . . . Memo Opinion, A-page 10." (*Id.*) Because the Carters ask the Court to take judicial notice of documents that are not subject to judicial notice, the Court will deny as moot the Judicial Notice Motion.

"As an initial matter, federal district courts generally do not take judicial notice of the analysis and reasoning set forth in another court's opinion." *United States v. Rosga*, 864 F. Supp. 2d 439, 447 n.7 (E.D. Va. 2012). "Rather, Federal Rule of Evidence 201 allows the court to 'judicially notice a *fact* that is not subject to reasonable dispute.'" *Id.* (citing Fed. R. Evid. 201(b)). "When a party seeks judicial notice of the meaning of a document, the meaning of the document must be relevant and not subject to reasonable dispute." *N. Carolina ex rel. N. Carolina Dep't of Admin. v. Alcoa Power Generating, Inc.*, No. 5:13-cv-633-BO, 2015 WL 224740, at *3 (E.D.N.C. Jan. 15, 2015) (citing *Ohio Valley Envtl. Coal v. Aracoma Coal Co.*, 556 F.3d 177 (4th Cir. 2009)).

The document that the Carters ask the Court to take judicial notice of is a legal decision rather than facts within the meaning of Federal Rule of Evidence 201. This document is not subject to judicial notice. The Court will deny as moot the Carters' Judicial Notice Motion. (ECF No. 17.)

### B. The Carters' Due Process Demand

The Carters submitted their Due Process Demand after the United States filed its Motion for Summary Judgment. The Due Process Demand restates the Carters' arguments that the Court lacks subject-matter jurisdiction and raises additional objections to the lack of discovery, including, for example, "the court's irrational refusal to ultimately compel the Plaintiff United States to produce and disclose alleged evidentiary materials." (Due Process Demand ¶ 1, ECF No. 29.) In their "Prayer For *JUSTICE and a Hearing*," the Carters ask the Court to "strike the premature, and therefore improper, Motion for summary judgment that has been submitted by the Plaintiff." (Due Process Demand ¶ 7, ECF No. 29.) The Carters' Due Process Demand functionally argues that the Court should not grant summary judgment to the United States.

Because the Court has denied without prejudice the United States' Motion for Summary Judgment, the Court will deny as moot the Carters' Due Process Demand.

## V. Conclusion

For the foregoing reasons, the Court will deny the Carters' Motions to Dismiss; deny without prejudice the United States' Motion for Summary Judgment; deny as moot the Carters' Judicial Notice Motion; and, deny as moot the Carters' Due Process Demand.

An appropriate Order shall issue.

/s/
M. Hannah Lauck
United States District Judge

Date: 9-18-17
Richmond, Virginia