IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA,

       **Plaintiff,**

v.                                          Civil No. 3:16cv674

LEWIS F. CARTER, *et al.*,

       **Defendants.**

## MEMORANDUM OPINION

This is the second case the United States has brought seeking to impose and collect taxes from these defendants. The first case sought, successfully, to reduce to judgment unpaid taxes, interest, and penalties. This case seeks to foreclose on certain properties to collect those judgments. The Court will order the foreclosure.

Currently, this matter comes before the Court on Plaintiff the United States of America's Motion for Default Judgment[1] against Defendants Lewis F. Carter ("Lewis") and Mary Carter ("Mary") (the "Motion" or the "Motion for Summary Judgment"). (ECF No. 65.)[2] On February 27, 2018, after a hearing on the Motion at which all parties appeared, (*see* ECF No. 77), in light of the "strong preference that cases be decided on their merits," *Dow v. Jones*, 232 F. Supp. 2d 491, 495 (D. Md. 2002), the Court gave notice to the United States and all defendants that it

---

[1] The United States provided Lewis and Mary with appropriate notice pursuant to *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975). (ECF No. 67.)

[2] In light of the Court's February 27, 2018 Order, (ECF No. 78), ECF No. 65 will be referred to in this Memorandum Opinion as a Motion for Summary Judgment.

would "consider the Motion as a Motion for Summary Judgment under Federal Rule of Civil Procedure 56."[3]  (Feb. 27, 2018 Order 1, ECF No. 78.)

Before the hearing, Lewis and Mary jointly filed the following documents:  (1) Motion to Dismiss for Lack of Subject Matter Jurisdiction, (ECF No. 62); (2) Objection to Clerk's Entry of Default, (ECF No. 63); (3) Motion to Set Aside Default and Motion for Hearing, (ECF No. 64); (3) Motion to Dismiss for Lack of Subject-Matter Jurisdiction of the District Court that can be Taken Under Statutes Alone, (ECF No. 73); (4) Objection to the Mischaracterization of Defendant's Position by Plaintiff, (ECF No. 74); and, (5) Motion to Dismiss for Lack of Jurisdiction, (ECF No. 75).  Before the hearing, Mary alone filed the following document: Motion to Take Judicial Notice of Her Separate Tax Filing Status and Her 50% Property Interests by Marriage.  (ECF No. 72.)

During the February 26, 2018 hearing, counsel for the United States and all three Carters appeared.  (ECF No. 77.)  The Court heard oral argument.  (*Id.*)  Orally notifying the Carters that they faced summary judgment and foreclosure, the Court granted the Carters leave to file

---

[3] In the February 27, 2018 Order, the Court quoted the entirety of Rule 56 in the Order, granted Lewis Carter and Mary Carter additional time to respond to the Motion, and warned Lewis and Mary, pursuant to *Roseboro*, 528 F.2d at 310, that the Court "possesses the authority to grant the United States' motion and grant summary judgment on the basis of the United States' motion if [Lewis and Mary] do not file a response." (Feb. 27, 2018 Order 3, ECF No. 78.) The Court notified Lewis and Mary that if "the Court enters judgment for the United States, the case will be concluded against you, and the Court will have decided this case against you and in favor of the United States." (*Id.*) Finally, the Court warned Lewis and Mary:

> In any response you file, you must identify all facts stated by the United States with which you disagree and must set forth your version of the facts by offering affidavits (written statements signed before a notary public and under oath) or by filing sworn statements (bearing a certificate that is signed under penalty of perjury) of your own and of any other witness and/or by submitting other responsive materials, as appropriate.

(*Id.*)

evidence or any supplemental challenges no later than twenty-one (21) days from the date of the hearing. (Tr. 31-34, ECF No. 79.)

After the hearing, Mary alone filed the following document: Letter dated March 13, 2018,[4] which acknowledged her fifty-percent interest in only two of the properties at issue ("Mary Letter"). (ECF No. 82.) After the hearing, Lewis alone filed the following documents: (1) "Objection to the Mischaracterization of Defendant's Position by the Plaintiff and Motion to Dismiss for Lack of Jurisdiction or Trial by Jury Demanded Under Federal Rule of Civil Procedure 79(a)(3)" ("Lewis's First Objection")[5], (ECF Nos. 80, 81); (2) "Objection by Lewis Carter to the Court's Claim of a Subject-Matter Jurisdiction Taken Under Only Opinions" ("Lewis's Second Objection"), (ECF No. 85); and, (3) "Counterclaim and Cross-Complaint against Jeff Sessions, Deborah K. Hurst, W. Stark, Hannah Lauck, and the United States of America," ("Lewis's Counterclaim"), (ECF No. 86).

The United States responded to several of Lewis's and Mary's filings. (*See* ECF Nos. 76, 83, 84, 87, 88.) Neither Lewis nor Mary replied, and the time to do so has expired. The Court dispenses with additional oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. Accordingly, all

---

[4] Mary's March 13, 2018 letter states: "Since the court has recognized my right to receive 50% of the net proceeds from the sale of the marital home situated on 2.71+ acres; I see no need for a response pleading and request only a check for my portion after the sale has been completed and approved." (Mary Letter 1, ECF No. 82.)

[5] Lewis's First Objection bears the dual-purpose title of "Objection to the Mischaracterization of Defendant's Position by the Plaintiff and Motion to Dismiss for Lack of Jurisdiction or Trial by Jury Demanded Under Federal Rule of Civil Procedure 79(a)(3)," so it was filed as two separate docket entries. (ECF Nos. 80, 81.) The two entries are identical.

matters are ripe for disposition. The Court exercises jurisdiction pursuant to 28 U.S.C. §§ 1340[6] and 1345,[7] 26 U.S.C. § 7402(a),[8] and 26 U.S.C. § 7403.[9]

For the reasons that follow the Court will: (1) vacate its entry of default against Mary; (2) to the extent necessary, overrule or deny all of Lewis's and Mary's frivolous and duplicative motions and objections, (ECF Nos. 62, 63, 64, 73, 74, 75, 80, 81, and 85); (3) grant Mary's Motion to Take Judicial Notice, (ECF No. 72); (4) dismiss Lewis's Counterclaim, (ECF No. 86); (3) grant summary judgment against Lewis in favor of the United States, (ECF No. 65); (4) foreclose the United States' tax liens against Lewis; (5) enter an order authorizing the United States to sell certain real property owned by Lewis; and (6) dismiss this case in its entirety.

## I. Factual and Procedural Background

### A.    Factual Background

This case arises from the United States' efforts to collect eleven years of unpaid taxes, penalties, and interest from Lewis. On March 16, 2015, the United States filed a Complaint to reduce to judgment tax assessments for the tax years 1997–2000, 2002–2006, and 2008–2009.

---

[6] "The district courts shall have original jurisdiction of any civil action arising under any Act of Congress providing for internal revenue, or revenue from imports or tonnage except matters within the jurisdiction of the Court of International Trade." 28 U.S.C. § 1340.

[7] "Except as otherwise provided by Act of Congress, the district courts shall have original jurisdiction of all civil actions, suits[,] or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress." 28 U.S.C. § 1345.

[8] Section 7402(a) provides, in relevant part: "The district courts of the United States at the instance of the United States shall have such jurisdiction . . . to render such judgments and decrees as may be necessary or appropriate for the enforcement of the internal revenue laws." 26 U.S.C. § 7402(a).

[9] Section 7403 allows "a civil action to be filed in a district court of the United States to enforce the lien of the United States . . . or to subject any property . . . of the delinquent, or in which he [or she] has any right, title, or interest, to the payment of such tax or liability." 26 U.S.C. § 7403(a).

*United States v. Lewis Carter* ("*Carter I*"), No. 3:15cv161, (E.D. Va. filed March 16, 2015). On

December 31, 2015, the Court granted summary judgment for the United States on Lewis's tax

liabilities. (*Carter I*, Final Order 1, ECF No. 56.) In that decision, the Court evaluated and

rejected Lewis's theories as to why taxes could not be imposed or collected. (*Carter I*, Mem.

Op. 9–10, 14–16, ECF No. 55.) The Court held that the United States could impose and collect

taxes without violating the Constitution. (*Id.* at 9.) The Court found it had subject matter

jurisdiction over the case, and that a finding of summary judgment would not violate Lewis's

Seventh Amendment right to a jury trial. (*Id.* at 10–11.) The Court found that the United States

had properly made assessments against the Lewis. (*Id.* at 15.) Finally, the Court denied all other

motions and overruled all "objections" lodged by Lewis, finding his Constitutional and

procedural arguments meritless. (*Carter I*, Final Order 1, ECF No. 56.) On January 14, 2016,

the Court entered an Amended Order that Lewis's unpaid federal tax debt, "in the amount of

$309,718.95, as of January 5, 2015, plus statutory additions accruing thereafter until paid," be

entered against Lewis. (*Carter I*, Amended Order 2, ECF No. 75.)

After the final judgment was entered against him, Lewis peppered the Court with a

number of filings in *Carter I*. *See Carter I*, No. 3:15cv161, 2016 WL 1752761, at *1 n.1

(E.D.Va. Apr. 29, 2016) (listing the "twenty-one filings before the Court," including "two

Motions to Alter or Amend a Judgment . . . and a Motion to Void the Order of the Court").

Lewis also appealed the Court's grant of summary judgment and denial of his "multiple

postjudgment motions, " and on October 20, 2016, the United States Court of Appeals for the

Fourth Circuit affirmed the Court's judgment. *United States v. Carter* ("October 20, 2016

Fourth Circuit Decision"), 669 F. App'x 682 (4th Cir. 2016), cert. denied, 138 S.Ct. 487 (2017).

Lewis unsuccessfully appealed and objected to the outcome in *Carter I* for two-and-a-half years. Following the October 20, 2016 Fourth Circuit Decision, Lewis petitioned the Supreme Court of the United States for a Writ of Certiorari. *Carter v. United States*, 138 S.Ct. 487 (2017). His petition was denied on November 27, 2017. *Id.* Lewis also filed a Cross-Complaint in the closed case on December 1, 2016, (*Carter I*, ECF No. 95), as well as several additional motions, including a motion for summary judgment, (*Carter I*, ECF No. 97), a motion to alter or amend, (*Carter I*, ECF No. 99), and two separate motions to void judgment, (*Carter I*, ECF Nos. 104, 106). Lewis's Cross-Complaint was dismissed, (*Carter I*, ECF No. 98), and each of his post-judgment motions were denied, (*Carter I*, ECF Nos. 98, 109). These decisions were affirmed by the United States Court of Appeals for the Fourth Circuit in August of 2018. *United States v. Carter*, No. 18-1471, 2018 WL 4057360 (4th Cir. Aug. 27, 2018).

On August 15, 2016, the United States filed the instant Complaint, seeking to "foreclose the federal tax liens against certain real properties with respect to Lewis Carter's tax and penalty liabilities" for the tax years 1997–2000, 2002–2006, and 2008–2009. (Compl. ¶ 1, ECF No. 1.) The United States joined as defendants Mary, Lewis's brother Bobby Carter ("Bobby"), and the Virginia Department of Taxation ("VDOT"). The United States joined Mary and Bobby because it believed both Mary and Bobby may have "own[ed] an interest in one of the properties" on which the United States sought to foreclose. (Compl. ¶¶ 5, 6.) The United States joined VDOT because it believed VDOT "may claim an interest in the real properties . . . by virtue of a state tax lien" on which the United States sought to foreclose. (Compl. ¶ 7.)

In its Complaint, the United States alleges that, after the Court's grant of summary judgment in *Carter I*, federal tax liens attached to three real properties in which Lewis held an

interest. (Compl. ¶ 9.) The United States seeks to foreclose on the following three properties, all of which are located in Westmoreland County, Virginia:

(1)  a property located at 1807 Oldhams Road, Hague, Virginia (the "Oldhams Road Property");

(2)  0.17 acres, which became part of the Oldhams Road Property (the "Oldhams Road Addition"); and,

(3)  five additional parcels of property identified only by tax map identification numbers, (the "Five Parcels").

(Compl. ¶ 17.) According to the Complaint, Lewis and Mary acquired the Oldhams Road Property as tenants by the entireties in 1988. (Compl. ¶ 13.) Lewis and Mary acquired the Oldhams Road Addition as tenants by the entireties on July 9, 1997. (Compl. ¶ 14.) And Lewis and Bobby acquired the Five Parcels as joint tenants via bequest from their father, Laxter Carter, when he died on October 30, 2007. (Compl. ¶ 16.)

The United States avers in the Complaint that it "is entitled to foreclose the foregoing tax liens, sell the real properties, and distribute the proceeds in accordance with the rights of the parties determined herein, with the amounts attributable to Lewis Carter's interest to be paid to the United States and applied against his federal tax liabilities." (Compl. ¶ 18.) The United States seeks judgment that it "has valid and subsisting federal tax liens . . . and rights to . . . the real properties described" in the Complaint, (Compl. 4), and asks the Court to order that the federal tax liens attach to the properties, that the properties be foreclosed and sold, and that the proceeds of the sale "be distributed in accordance with the rights of the parties determined herein, with the amounts attributable to Lewis Carter's interest to be paid to the United States and applied against his federal income tax liabilities." (Compl. 4–5.)

**B.    Procedural History**

Although the factual history of this case lacks complexity, the procedural history has been marked by the numerous lengthy, duplicative, and frivolous filings submitted in various configurations by Lewis, Mary, and Bobby. The Court separates the filings into five categories for clarity.

**1.    Filings Jointly Submitted by Lewis, Mary, and Bobby**

For the first part of the case, Lewis, Bobby, and Mary (collectively, the "Carters") submitted all filings jointly. (*See* ECF Nos. 7, 8, 9, 10, 11, 13, 14, 17, 18, 25, 26, 27, 28, 29, 30, 34, 39, 40, 41.) On August 15, 2016, the United States filed its Complaint, seeking to "foreclose the federal tax liens against certain real properties with respect to Lewis Carter's tax and penalty liabilities" for the tax years 1997–2000, 2002–2006, and 2008–2009, and joining Mary, Bobby, and VDOT. (Compl. 1, ¶¶ 4–7.) The Carters jointly filed three motions to dismiss,[10] and the United States responded to those three motions in one filing. The Carters then filed four motions asking the Court to take judicial notice of the Constitution, the Federal Rules of Evidence, and several decisions of the Supreme Court of the United States. (*See* ECF Nos. 10, 11, 13, 14.) The Court denied those motions as moot. (September 26, 2016 Mem. Order 2, ECF No. 16.) After the United States filed its response to their first three motions to dismiss, the Carters filed a

---

[10] The three motions to dismiss, with all punctuation, capitalization, and emphasis in originals, were titled as follows: (1) "Defendant's Motion to Dismiss for Lack of subject-matter Jurisdiction of the District Court under IRC § 7402, Over the Enforcement of Title 26 Law" (the "First Motion to Dismiss"), (ECF No. 7); (2) "Defendant's Motion to Dismiss for Lack of *subject-matter* Jurisdiction" (the "Second Motion to Dismiss"), (ECF No. 8); and, (3) "DEFENDANT'S MOTION TO DETERMINE THE *subject-matter jurisdiction* OF THE COURT" (the "Third Motion to Dismiss"), (ECF No. 9).

fourth motion to dismiss.[11]  On that same day, the Carters filed the Judicial Notice Motion, titled "Motion to Take Judicial Notice of Law in the District Court's Own Decision, Just Previously Taken in Case No: 3:15-cv-161." The United States did not respond to either the Fourth Motion to Dismiss or the Judicial Notice Motion and the time to do so has expired.

Before the Court ruled on the Carters' Motions to Dismiss and before discovery commenced, the United States filed a Motion for Summary Judgment.[12] (ECF No. 21.) This motion prompted another flurry of filings by the Carters.  Specifically, the Carters filed: (1) "Defendant's Objection and Motion to Strike," (ECF No. 25); (2) "Defendant's Second Objection to Plaintiff's Motion for Summary Judgment," (ECF No. 26); (3) "Defendant's Third Objection to Plaintiff's Motion For Summary Judgment For Failure To Establish the Subject-Matter Jurisdiction Of the District Court," (ECF No. 27); (4) "Defendant's First Objection and Motion to Strike," (ECF No. 28); (5) "Defendant's *DEMAND* For *due process* Hearing," (ECF No. 29); and, (6) "Defendant's Demand for Trial by Jury," (ECF No. 30).  The United States responded to these objections and motions to strike, and the Carters' jury demand. (ECF Nos. 31, 32.)

The United States thereafter filed a Notice stating its intent to submit the Motion for Summary Judgment without a hearing, (ECF No. 33), eliciting another round of filings from the Carters. On the same day, the Carters filed: (1) "Defendants' Objection to Plaintiff's Motion for

---

[11] This motion was titled, with all capitalization and emphasis in original, "Defendant's Objection, Reply, and Motion to Dismiss For Lack of *subject-matter jurisdiction* of the District Court under IRC § 7402 & 7608(a) over the Enforcement of Title 26 Law as a Direct Tax Without Apportionment, and for Forgery under IRC §§ 6321 and 7403," (the "Fourth Motion to Dismiss"). (ECF No. 18.)

[12] The United States provided the Carters with appropriate notice pursuant to *Roseboro*, 528 F.2d at 310. (*See* ECF Nos. 23, 24.)

9

Summary Judgment," (ECF No. 34); and, (2) "Defendants' Second Demand for Due Process Hearing," (ECF No. 35). The United States responded to neither of these filings.

On September 18, 2017, the Court denied the four motions to dismiss. (Sept. 18, 2017 Order 1, ECF No. 37.) In the Memorandum Opinion accompanying that Order, the Court issued a detailed denial of the motions. (Sept. 18, 2017 Mem. Op., ECF No. 36.) Recounting many of the holdings from *Carter I*, the Court explained that United States could enforce a validly imposed income tax lien on real property owned by delinquent taxpayers. (*Id.* at 10–12.) The Court also confirmed it had subject-matter jurisdiction over the claim, and that personal jurisdiction over all defendants, including the Carters, existed. (*Id.* at 12–13.) The Court then denied the Carters' miscellaneous other procedural or constitutional motions or objections. (*Id.* at 17.)

Finally, in deference to the Carters' *pro se* status, the Court also denied without prejudice the United States' Motion for Summary Judgment, the Carters' objections thereto, the Carters' due process demand, and the Carters' jury demand. (Sept. 18, 2017 Order 1, ECF No. 37.) The Court ordered each of the Carters to "file their answers to the United States' Complaint in accordance with the Federal Rules of Civil Procedure and the Local Civil Rules for the Eastern District of Virginia by close of business October 2, 2017." (*Id.*)

On October 2, 2017, the deadline set by the Court for filing their answers, the Carters filed an "Objection to the Order of the Court." (ECF No. 39.) On October 10, 2017, the Carters filed a "Motion to Dismiss for Lack of Territorial Jurisdiction," (ECF No. 40), and a "Memorandum at Law in Support," (ECF No. 41). The Carters never filed answers to the United States' Complaint, and on October 30, 2017, the United States moved for an entry of default against each of the Carters. (ECF No. 44.) On November 20, 2017, the Carters filed an

"Objection to Denial of Due Process of Law and Demand for Disclosure of the Constitutional Authority that Gives the Court the Capacity to Take Jurisdiction and Enter Judgments, Orders, and Decrees in Favor of the United States Arising from a Civil Proceeding Regarding an Alleged Debt, in Westmoreland, Virginia." (ECF No. 49.)

### 2. **Filings Submitted by Bobby Only**

Also on November 20, 2017, Bobby Carter filed a letter individually, in which he stated a desire "to claim 50% of any proceeds from the sale of all properties that I share ownership with Lewis Carter." (Bobby Letter 1, ECF No. 48.) Bobby also contended that "my only involvement in this case is that I co-inherited this property with Lewis after our father's death. I do not feel I should lose my share of this inheritance due to the poor judgment on my brother's part." (*Id.*)

After filing the Bobby Letter, Bobby joined Lewis and Mary in no other filings, aside from the Objection submitted the same day, (ECF No. 49). On November 22, 2017, the United States withdrew its Motion for Default as to Bobby only in light of his letter, (ECF No. 48), asserting an interest in the real property at issue, (ECF No. 52). The Court thereafter ordered the Clerk to enter default against Lewis and Mary, finding that they each had "'failed to plead . . . , and that failure [has been] shown' by the absence on the docket of any answer filed." (Jan. 2, 2018 Mem. Order 8, ECF No. 56 (quoting Fed. R. Civ. P. 55(a)(alterations in original)).) The Clerk entered default against Lewis and Mary the same day. (ECF No. 57.)

On July 5, 2018, the United States filed a Stipulation between the United States, VDOT, and Bobby (the "Bobby Stipulation"). (ECF No. 58.) In the Bobby Stipulation, the United States, VDOT, and Bobby stated their agreement that, "[i]f the United States prevails on its foreclosure claim with respect to the [Five Parcels] and sells the [Five Parcels], Bobby Carter is

entitled to receive 50% of the sales proceeds after payment of expenses of sale and any outstanding real estate taxes." (Bobby Stip. 1, ECF No. 58.) Since the United States filed the Bobby Stipulation, Bobby has appeared in person at each scheduled hearing, but has filed nothing else, either individually or jointly with Lewis and Mary.

### 3. **Filings Submitted by Lewis and Mary Only**

Beginning on January 11, 2018, Lewis and Mary jointly filed the following documents: (1) "Motion to Dismiss for Lack of Subject Matter Jurisdiction," (ECF No. 62); (2) "Objection to Clerk's Entry of Default," (ECF No. 63); (3) "Motion to Set Aside Clerk's Entry of Default," (ECF No. 64); (4) "Motion to Dismiss for Lack of Subject-Matter Jurisdiction of the District Court That Can be Taken Under Statutes Alone, Without an Identified Constitutional Authority," (ECF No. 73); (5) "Objection to the Mischaracterization of Defendant's Position by Plaintiff," (ECF No. 74); and, (6) "Motion to Dismiss for Lack of Jurisdiction," (ECF No. 75).

### 4. **Filings Submitted by Mary Only**

Mary also individually filed a "Motion to Take Judicial Notice of Her Separate Tax Filing Status and Her 50% Property Interests by Marriage" (the "Mary Judicial Notice Motion"). (ECF No. 72.) In the Mary Judicial Notice Motion, Mary asserts that she "is a U.S. taxpayer who files separately from her husband, defendant Lewis Carter." (*Id.* at 1 (emphasis omitted).) She contends that the United States "has no outstanding claims for tax against her for any tax year, and their [sic] is no judgment against her, personally, that this [C]ourt is being asked to enforce in this civil action." (*Id.*) Therefore, Mary claims, "her property interests, in all of the real property at issue in this action, which under the Commonwealth law is 50% of her husband's property by marriage, should not be damaged or prejudiced by this [C]ourt's [o]rders or actions undertaken in this civil action." (*Id.* at 2 (emphasis omitted).)

On February 26, 2018, the Court held a hearing on the United States' Motion for Summary Judgment. (*See* ECF No. 77.) The Court also allowed Lewis and Mary to be heard on their pending motions and objections. Addressing the Mary Judicial Notice Motion, the Court questioned Mary about why she was submitting filings asserting conflicting positions regarding whether she was subject to a federal income tax. (Tr. 19–22, ECF No. 79.) Mary admitted that she had been signing "documentation that my husband gets me to read and sign." (Tr. 19.) When the Court clarified that the motions Mary had been joining asserted that she was not subject to income tax, Mary stated, "I don't understand what you mean. I'm sorry. I do my taxes. I file my taxes. I've been filing my taxes for years. I don't file with [Lewis]. I file separately but married. I file all my taxes. I've never not filed my taxes." (Tr. 20.) Mary said, "I signed those documentations that he gives me, and I do read them over, and the only thing that I sign is the papers that he writes up for me about not having a lawyer." (Tr. 20.) Mary clarified that she only claimed a marital interest in "[t]he house, the home that I live in," (Tr. 22). The United States conceded that Mary had a fifty percent interest in the Oldhams Road Property and the Oldhams Road Addition. (Tr. 16.)

### 5. **Filings Submitted by Lewis Only**

After the hearing, Mary no longer joined the numerous filings Lewis continued to submit. On March 19, 2018, the day before the deadline the Court set to file a response to the United States' Motion, Lewis filed an "Objection to the Mischaracterization of Defendant's Position by the Plaintiff," (ECF No. 80), and a "Motion to Dismiss for Lack of Jurisdiction or Trial by Jury Demanded Under Federal Rule of Civil Procedure 79(a)(3)," (ECF No. 81). Mary alone filed a Letter dated March 13, 2018. (Mary Letter, ECF No. 82.) The United States responded to Mary's Letter, (ECF No. 83), and to Lewis's objection and motion, (ECF No. 84). Lewis

thereafter filed an "Objection by Lewis Carter to the Court's Claim of a Subject-Matter Jurisdiction Taken Under Only Opinions," (ECF No. 85), and a "Counterclaim and Cross-Complaint against Jeff Sessions, Deborah K. Hurst, W. Stark, Hannah Lauck, and [the] United States of America," (ECF No. 86). The United States responded to both of these filings. (ECF Nos. 87, 88.)

## II. Relevant Legal Standards: The United States' Motion

### A. Legal Standard: Federal Rule of Civil Procedure 56

Summary judgment under Rule 56 is appropriate only when the Court, viewing the record as a whole and in the light most favorable to the nonmoving party, determines that there exists no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986). Once a party has properly filed evidence supporting the motion for summary judgment, the nonmoving party may not rest upon mere allegations in the pleadings, but instead must set forth specific facts illustrating genuine issues for trial. *Celotex Corp.*, 477 U.S. at 322–24. These facts must be presented in the form of exhibits and sworn affidavits. Fed. R. Civ. P. 56(c).

A court views the evidence and reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255. Whether an inference is reasonable must be considered in conjunction with competing inferences to the contrary. *Sylvia Dev. Corp. v. Calvert Cty.*, 48 F.3d 810, 818 (4th Cir. 1995). Nonetheless, the nonmoving "party is entitled 'to have the credibility of his evidence as forecast assumed.'" *Miller v. Leathers*, 913 F.2d 1085, 1087 (4th Cir. 1990) (en banc) (quoting *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979)). Ultimately, a court must adhere to the affirmative obligation to bar

14

factually unsupportable claims from proceeding to trial. *Felty v. Graves–Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (citing *Celotex Corp.*, 477 U.S. at 323–24).

## B.     Legal Standard: Pre-Discovery Motions for Summary Judgment

The Court here faces a tangled procedural backdrop in ruling on the Motion for Summary Judgment. No discovery has occurred, and, despite the Court's order to do so, Lewis has never filed an answer or addressed the merits of the United States' Complaint.

Generally, "summary judgment should only be granted 'after adequate time for discovery,'" in part because pre-discovery summary judgment "forces the non-moving party into a fencing match without a sword or mask." *McCray v. Md. Dep't of Transp., Md. Transit Admin.*, 741 F.3d 480, 483 (4th Cir. 2014) (citing *Celotex*, 477 U.S. at 322). The Fourth Circuit has held that "'summary judgment [must] be refused where the nonmoving party has not had the opportunity to discover information that is essential to [her or] his opposition.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (first alteration in original) (quoting *Anderson*, 477 U.S. at 250 n.5). Allowing sufficient time for discovery before summary judgment "'is considered especially important when the relevant facts are exclusively in the control of the opposing party.'" *Id.* (quoting 10B Charles A. Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice & Procedure* § 2741, at 419 (3d ed.1998)).

When a party files a motion for summary judgment and the non-movant believes that more discovery is needed in order to demonstrate the existence of a genuine issue of material fact, the proper procedure is to file an affidavit or declaration pursuant to Federal Rule of Civil Procedure 56(d) stating "that, for specified reasons, [the party] cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). Rule 56(d) motions are generally "'broadly favored and should be liberally granted' in order to protect non-moving parties from premature

summary judgment motions." *McCray*, 741 F.3d at 484 (quoting *Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Balt.*, 721 F.3d 264, 281 (4th Cir. 2013)). In ruling on a Rule 56(d) motion, a court can: "(1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or[,] (3) issue any other appropriate order." *Id.*

> Although filing a Rule 56(d) affidavit is the procedurally proper course,
>
> strict compliance with Rule 56([d]) affidavits may not be necessary where the circumstances are such that "the nonmoving party, through no fault of its own, has had little or no opportunity to conduct discovery, and when fact-intensive issues, such as intent, are involved," provided that "the nonmoving party has adequately informed the district court that the motion is pre-mature and that more discovery is necessary."

*Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008) (quoting *Harrods Ltd.*, 302 F.3d at 244); *see also McCray*, 741 F.3d at 484. A non-movant can sufficiently place the district court on notice of the need for additional discovery by detailing "which specific facts are yet to be discovered" in its opposition to the summary judgment motion. *McCray*, 741 F.3d at 484 (citing *Nader*, 549 F.3d at 961); *Harrods Ltd.*, 302 F.3d at 21. However, courts in this circuit "place great weight on the Rule 56([d]) affidavit." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996). The Fourth Circuit has specifically cautioned that "parties who ignore Rule 56([d])'s affidavit requirement do so at their peril.... [O]ur court expects full compliance with Rule 56([d]) and . . . the 'failure to file an affidavit under Rule 56([d]) is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods Ltd.*, 302 F.3d at 246 n.19 (internal quotations omitted) (quoting *Evans*, 80 F.3d at 961).

### III. Analysis

For the reasons stated below, the Court will set aside the default entered against Mary and grant summary judgment for the United States against Lewis. Good cause exists to set aside

default against Mary. The United States has properly filed evidence which, even viewed in the light most favorable to Lewis, establishes that the United States is entitled to summary judgment. In response, Lewis has submitted only improperly duplicative and frivolous motions that neither establish a genuine dispute of material fact nor identify as-yet-undiscovered facts that could create a genuine dispute.

## A. **Factual Findings**

### 1. **Lewis's Tax Liabilities**

Lewis failed to timely file federal income taxes for the tax years 1997–2000, 2002–2006, and 2008–2009. (IRS Assessment Forms, ECF No. 66-10.) In accordance with 26 U.S.C. § 6203[13], a delegate of the Secretary of the Treasury of the United States made assessments against Lewis demonstrating unpaid income tax liabilities for those tax years. (*Id.*) Further, the evidence illustrates that the United State properly assessed penalties against Lewis under 26 U.S.C. §§ 6651[14] and 6654[15] for failing to: (1) file timely tax returns and pay the amounts due; and, (2) make required tax deposits. (*See id.*) Finally, the United States establishes that, from the date Lewis's tax liabilities and penalties became due, interest has been assessed against him under 26 U.S.C. §§ 6601(a) and (b),[16] at the rate set forth in 26 U.S.C. § 6621(a).[17] (*See id.*)

---

[13] Section 6203 provides the Secretary of the Treasury with the authority to promulgate rules and regulations prescribing the method of assessment. *See* 26 U.S.C. § 6203.

[14] Section 6651 provides penalties for, among other things, the failure to timely pay taxes and the failure to timely pay taxes after the issuance of notice. *See* 26 U.S.C. § 6651.

[15] Section 6654 provides penalties for the underpayment of taxes. *See* 26 U.S.C. § 6654.

[16] Sections 6601(a) and (b) provide, in pertinent part:

(a) **General rule.** — If any amount of tax imposed by this title (whether required to be shown on a return, or to be paid by stamp or by some other method) is not paid on or before the last date prescribed for payment, interest on such amount at

Considering this undisputed evidence, on December 31, 2015, this Court granted summary judgment for the United States on Lewis's tax liabilities in a previous case. (*See Carter I*, Final Order 1, ECF No. 56.) On January 14, 2016, the Court entered an amended order that Lewis's unpaid federal tax debt, "in the amount of $309,718.95, as of January 5, 2015, plus statutory additions accruing thereafter until paid," be entered against Lewis. (*Carter I*, Am. Order 2, ECF No. 75.)

### 2. The Relevant Properties

In 1988, Lewis and Mary acquired the Oldhams Road Property as tenants by the entirety.[18] (Oldhams Road Property Deed 1, ECF No. 66-11, attached to this Memorandum Opinion as Exhibit No. 1.) On July 9, 1997, Lewis and Mary acquired the Oldhams Road Addition, also as tenants by the entireties. (Oldhams Road Addition Deed 1, ECF No. 66-12, attached to this Memorandum Opinion as Exhibit No. 2.) Finally, Lewis and Bobby acquired the Five Parcels as joint tenants via bequest from Laxter Carter after his death on October 30, 2007.

---

the underpayment rate established under section 6621 shall be paid for the period from such last date to the date paid.

**(b) Last date prescribed for payment.** — For purposes of this section, the last date prescribed for payment of the tax shall be determined under chapter 62 with the application of the [rules articulated in subsections (1)–(5)].

26 U.S.C. §§ 6601(a), (b).

[17] 26 U.S.C. § 6621(a) provides, in pertinent part: "The overpayment rate established under this section shall be the sum of . . . the Federal short-term rate determined under subsection (b), plus 3 percentage points (2 percentage points in the case of a corporation) . . . ." 26 U.S.C. § 6621(a).

[18] The Complaint states that Lewis and Mary acquired the Oldhams Road Property "[o]n or about October 21, 1988." (Compl. ¶ 13.) However, the deed attached to the Motion for Summary Judgment has a date of August 4, 1988. (Oldhams Road Property Deed 1.) The date discrepancy has no relevance in this action because, either way, Lewis and Mary acquired the Oldhams Road Property before Lewis's tax liabilities arose.

(Laxter Carter Will 2, 5, ECF No. 66-2; Five Parcels Deed, ECF No. 66-1, attached to this Memorandum Opinion as Exhibit Nos. 3, 4.)

### 3. Each Party's Interest in the Properties

#### a. VDOT's Interest in the Properties

On March 2, 1998, and December 30, 1998,[19] VDOT recorded two memoranda of lien in the Westmoreland Circuit Court for Lewis's unpaid state tax liabilities for tax years 1993–1995. (VDOT Stip. 1, ECF No. 59; Form ML-1 1–2, ECF No. 66-3.) On December 30, 2008, VDOT recorded another memorandum of lien in the Westmoreland Circuit Court for Lewis's unpaid state tax liabilities for tax years 1997 and 2000–2005. (VDOT Stip. 2; Mem. Lien 1, ECF No. 66-6.)

#### b. Bobby's Interest in the Five Parcels

Because Lewis and Bobby acquired the Five Parcels as tenants in common, "share and share alike," (Laxter Will 2), Bobby retains a fifty-percent interest in the Five Parcels. *See In re Raymond Gene Gonzales, Debtor*, No. 5:15-cv-005450BR, 2014 WL1056985 (E.D.N.C. 2014). On January 5, 2018, the United States, VDOT, and Bobby entered into a stipulation agreeing that "[i]f the United States prevails on its foreclosure claim with respect to the [Five Parcels] and sells the [Five Parcels], Bobby Carter is entitled to receive 50% of the sales proceeds after payment of expenses of sale and any outstanding real estate taxes." (Bobby Stip. 1.) Accordingly, the Court concludes that Bobby retains a fifty-percent interest in the Five Parcels.

---

[19] Although the Memoranda of Lien list dates of February 23, 1998, and December 17, 1998, as when the liens *issued*, no party disputes that the liens were *recorded* on March 2, 1998, and December 30, 1998. (*See* Form ML-1 1, 2, ECF No. 66-3)

c.    **Mary's Interest in the Oldhams Road Property and the Oldhams Road Addition**

Because Lewis and Mary acquired the Oldhams Road Property and the Oldhams Road Addition as tenants by the entirities, Mary retains a fifty-percent interest in both those properties. *See Christopher Ramsay v. Sanibel & Lancaster Insurance, LLC, et al.,* No. 2:11cv207, 2016 WL3360496, at *2–4 (E.D. Va. 2016). On March 19, 2018, Mary submitted a letter stating in full:

> Since the court has recognized my right to receive 50% of the net proceeds from the sale of the marital home situated on 2.71+ acres; I see no need for a response pleading and request only a check for my portion after the sale has been completed and approved.

(Mary Letter 1, ECF No. 82.) The United States responded, stating that it had no objection to Mary's claim of entitlement to fifty percent of the proceeds of the Oldhams Road Property or the Oldhams Road Addition. (U.S. Resp. 1, ECF No. 83.) Accordingly, the Court concludes that Mary retains a fifty-percent interest in the Oldhams Road Property and the Oldhams Road Addition.

d.    **The IRS's Interest in the Properties**

On February 13, 2006, the IRS recorded a Notice of Federal Tax Lien with the Westmoreland Circuit Court for Lewis's unpaid tax liabilities for tax years 1997–2000, and 2002. (Notice Federal Tax Lien 1, ECF No. 66-4.) The IRS timely refiled that lien on March 19, 2015. (*Id.* at 2.) On August 7, 2009, the IRS recorded a Notice of Federal Tax Lien with the Westmoreland Circuit Court for Lewis's unpaid tax liabilities for tax year 2003. (Notice Federal Tax Lien 1, ECF No. 66-5.) On April 13, 2011, the IRS recorded a Notice of Federal Tax Lien with the Westmoreland Circuit Court for Lewis's unpaid tax liabilities for tax years 2004–2006, and a penalty for tax year 2003. (Notice Federal Tax Lien 1, ECF No. 66-7.) On June 24, 2013, the IRS recorded a Notice of Federal Tax Lien with the Westmoreland Circuit Court for Lewis's

unpaid tax liabilities for tax years 2008–2009. (Notice Federal Tax Lien 1, ECF No. 66-8.) Finally, on October 20, 2014, the IRS recorded a Notice of Federal Tax Lien with the Westmoreland Circuit Court for Lewis's unpaid civil penalties for tax year 2003. (Notice Federal Tax Lien 1, ECF No. 66-9.)

The United States and VDOT entered into a stipulation agreeing that, if the United States prevails on its foreclosure claims, the sales proceeds should be distributed between the United States and VDOT "in accordance with the lien priority reflected [by the IRS and VDOT liens recorded in the Westmoreland Circuit Court] after payment of the expenses of sale and any outstanding real estate taxes." (VDOT Stip. 2, ECF No. 59.) The Court finds that VDOT is entitled to this agreed-upon distribution of sales proceeds.

### B.    The Court Will Set Aside Default Entered Against Mary

#### 1.    Legal Standard: Setting Aside an Entry of Default

Rule 55(c) governs setting aside an entry of default or default judgment. That rule provides that a district court may "set aside an entry of default for good cause." Fed. R. Civ. P. 55(c). "The disposition of motions made under Rules 55(c) . . . is a matter which lies largely within the discretion of the trial judge and his [or her] action is not lightly to be disturbed by an appellate court." *Consolidated Masonry & Fireproofing, Inc. v. Wagman Const. Corp.*, 383 F.2d 249, 251 (4th Cir. 1967). A district court does not abuse its discretion in denying a motion under Rule 55(c) "unless it clearly appears that the District Court was clearly wrong in finding that good cause had not been shown for setting aside the default." *Id.*

In deciding whether to set aside the entry of a party's default, the district court should consider: "whether the moving party has a meritorious defense, whether it acts with reasonable promptness, the personal responsibility of the defaulting party, the prejudice to the party,

21

whether there is a history of dilatory action, and the availability of sanctions less drastic." *Payne ex rel. Estate of Calzada v. Brake*, 439 F.3d 198, 204–05 (4th Cir. 2006) (citing *Consolidated Masonry*, 383 F.2d at 251). Determining whether a party has taken reasonably prompt action, "must be gauged in light of the facts and circumstances of each occasion." *United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982). And in order to establish a meritorious defense, the party need only "present or proffer . . . evidence, which, if believed, would permit either the Court or the jury to find for the defaulting party." *Id.*

### 2.    Good Cause Exists to Set Aside Default as to Mary

On March 19, 2018, before the deadline the Court set to respond to the United States' Motion for Summary Judgment, Mary submitted a letter asserting her "right to receive 50% of the net proceeds from the sale of the marital home situated on 2.71+ acres." (Mary Letter 1.) The United States responded, stating that it had no objection to Mary's claim of entitlement to fifty percent of the proceeds of the Oldhams Road Property or the Oldhams Road Addition.

Mary's fifty percent interest in the properties the United States seeks to foreclose constitutes a meritorious defense, and one which the United States does not contest. Further, although Mary did not file the letter until more than two months after default was entered against her, she acted with reasonable promptness, filing it within the time the Court directed for responding to the United States' Motion for Summary Judgment. Although Mary's filing history in this case indicates dilatory action, she has since ceased joining in Lewis's frivolous and duplicative filings. The United States would not be prejudiced by setting aside the default against Mary, as evidenced by its lack of objection to Mary's claimed fifty percent interest in the Oldhams Road Property and the Oldhams Road Addition. (*See* U.S. Resp. Mary Letter 1.) For the same reason, the availability of less drastic sanctions need not be addressed. Therefore,

considering all the relevant factors, good cause exists to set aside default against Mary. *See*

*Payne*, 439 F.3d at 204–05. The Court will set aside its entry of default as to Mary.[20]

## C.  The United States Is Entitled to Foreclose Its Liens Upon Lewis's Properties

Federal tax liens arise when a tax liability is assessed, and attach to all property and

property rights then owned or thereafter acquired by the taxpayer. *See* 26 U.S.C. §§ 6321, 6322.

Pursuant to 26 U.S.C. § 6321,

> [i]f any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

26 U.S.C. § 6321. By utilizing the phrase, "all property and rights to property" in § 6321,

Congress intended that a federal tax lien "reach every interest in property that a taxpayer might

have." *United States v. Nat'l Bank of Commerce*, 472 U.S. 713, 720 (1985); *see also Glass City*

*Bank v. United States*, 326 U.S. 265, 267 (1945) ("Stronger language could hardly have been

selected to reveal a purpose to assure the collection of taxes."). A federal tax lien arises at the

time the assessment is made and remains until the liability is satisfied or becomes unenforceable

due to lapse of time. 26 U.S.C. § 6322; *see Drye v. United States*, 528 U.S. 49, 55 n.2 (1999).

When an individual refuses or neglects to pay a tax liability, the United States may

enforce its lien or "subject any property . . . of the delinquent . . . to the payment of such tax or

liability." 26 U.S.C. § 7403(a); *see also United States v. Rodgers*, 461 U.S. 677, 692–94 (1983).

After notification of all persons claiming an interest in the property, a court shall "finally

---

[20] Following the entry of default as to Lewis and Mary, (ECF No. 57), Lewis and Mary filed (1) "Objection to Clerk's Entry of Default," (ECF No. 63), and (2) "Motion to Set Aside Default and Motion for Hearing," (ECF No. 64.) Those pleadings argued that the Court should set aside the default because of the jurisdictional-related defenses they asserted via their various Motions to Dismiss. The Court's basis for setting aside the default as to Mary does not hinge on the arguments raised in ECF Nos. 63 and 64; consequently, the Court will deny the relief requested by these pleadings.

determine the merits of all claims to and liens upon the property." 26 U.S.C. § 7403(c). When the United States' claim "is established, [the court] may decree a sale of such property . . . and a distribution of the proceeds of such sale according to the findings of the court in respect to the interests of the parties and of the United States." *Id.*

In this case, the United States has established federal tax liens arising out of Lewis's unpaid federal income tax liabilities. Pursuant to 26 U.S.C. § 6321, those liens attached at the time of their assessment to the real property Lewis owned at the time and to all real property he has acquired since. Under 26 U.S.C. § 7403, the United States is entitled to foreclose its liens upon Lewis's property because he has refused or neglected to pay his outstanding tax liability. Lewis presents no evidence establishing a genuine dispute of material fact regarding the United States' entitlement to foreclose on his tax liability. The Court will grant summary judgment against Lewis in favor of the United States.

**D.    Lewis Raises No Genuine Issues of Material Fact and Identifies No Need for Additional Discovery**

After the Court gave notice that it would consider the United States' Motion as a Motion for Summary Judgment, Lewis submitted three additional filings: (1) Lewis's First Objection,[21] (ECF Nos. 80, 81); (2) Lewis's Second Objection, (ECF No. 85); and, (3) Lewis's Counterclaim, (ECF No. 86). Lewis's First Objection—the only document timely filed in accordance with the Court's order[22]—simply restates Lewis's earlier arguments that this Court lacks subject-matter jurisdiction over this action. It raises no genuine issues of material fact regarding the merits of

---

[21] Lewis's First Objection bore the dual-purpose title of "Objection to the Mischaracterization of Defendant's Position by the Plaintiff and Motion to Dismiss for Lack of Jurisdiction or Trial by Jury Demanded Under Federal Rule of Civil Procedure 79(a)(3)," so it was filed as two separate docket entries. (ECF Nos. 80, 81.) The two entries are identical.

[22] In setting the deadline to respond to the United States' Motion for Summary Judgment, the Court warned Lewis and Mary "that it may disregard any responses that are untimely or fail to comply with" Federal Rule of Civil Procedure 56. (Feb. 27, 2018 Order 3.)

the United States' claim or illustrating genuine issues for trial, *see Celotex Corp.*, 477 U.S. at 322–24, nor does it present specific reasons why Lewis cannot present facts essential to justify an opposition to summary judgment, *see* Fed. R. Civ. P. 56(d); *McCray*, 741 F.3d at 48. Despite the unusual procedural posture, granting summary judgment for the United States at this point is appropriate.

In Lewis's First Objection, he asserts his "[o]bjection to the continued refusals of the plaintiff United States, and the district court itself, to properly and fully identify on the record of the action, and now in the open courtroom, the specific subject-matter jurisdiction of the court." (Lewis's First Obj. 2, ECF No. 80 (emphases omitted).) He argues:

> The lack of specificity of the true and complete, specific subject-matter jurisdiction of the court, alleged [sic] taken over the civil actions by the court, is absolutely fatal to both this instant civil action, and the previous civil action with defendant Lewis Carter, out of which the judgment, pursued for execution in this action, comes.

(*Id.* at 4 (emphases omitted).)

Lewis states numerous objections, including to: (1) "the district court's changing of the alleged subject-matter jurisdiction of the court over the action," (*id.* at 5 (emphases omitted)); (2) "the evidence of an allegedly direct tax under the 16th Amendment, being wrongfully and improperly used by this court," (*id.* (emphases omitted)); (3) "the unconstitutional enforcement under Article I, of an income tax that is operationally assessed as a [d]irect unapportioned tax," (*id.* (emphases omitted)); (4) "the court's complete lack of any application of written law or true constitutional authority," (*id.* at 6); (5) "the improper presumed assumption of liability for tax," (*id.* (emphases omitted)); and, (6) the alleged violations of his rights under the Fourth, Fifth, Seventh, and Fourteenth Amendments, (*id.* at 7). Throughout the twenty-seven pages of Lewis's First Objection, Lewis continues to argue, as he has done in filings and in person before the Court, that the Court lacks subject-matter and personal jurisdiction over him, and that "[t]he

federal personal income tax is constitutional only as a uniform indirect tax, not as the unapportioned direct tax that was assessed in practice and is pursued for judicial enforcement by the plaintiff United States through these civil actions." (*Id.* at 23 (emphases omitted).)

Lewis also attaches seven exhibits to Lewis's First Objection. (ECF Nos. 80-1–80-7; 81-1–81-7.) The exhibits appear to be printouts from various websites, including www.Tax-Freedom.com, (ECF No. 80-1), and www.congress.gov, (ECF No. 80-2). He also includes several flow-charts, (ECF Nos. 80-4, 80-6), a "Parallel Table of Authorities and Rules," (ECF No. 80-5), and something that seems to be an excerpt from the United States Statutes at Large, (ECF No. 80-7). None of the exhibits constitute admissible evidence to which a party must cite when opposing summary judgment. *See* Fed. R. Civ. P. 56(c)(1)(A) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . ."). Regardless, none of the exhibits create a genuine dispute of material fact regarding whether the United States is entitled to foreclose on Lewis's properties, or identify specific facts as yet undiscovered that could aid Lewis in opposing summary judgment.

### IV. Frivolous and Duplicative Motions and Objections Filed by Lewis and Mary

Lewis, sometimes individually and other times joined by Mary, has filed a number of frivolous and duplicative motions, objections, or both. Those include (1) Motion to Dismiss for Lack of Subject Matter Jurisdiction, (ECF No. 62); (2) Motion to Dismiss for Lack of Subject Matter Jurisdiction, (ECF No. 73); (3) Objection to the Mischaracterization of Defendant's

Position by Plaintiff, [23] (ECF No. 74); (4) Motion to Dismiss for Lack of Subject Matter

Jurisdiction, (ECF No. 75); (5) Lewis's First Objection, (ECF Nos. 80, 81); and (7) Lewis's

Second Objection, (ECF No. 85). The Court finds that each of these motions or objections are

duplicative or frivolous in nature and should be denied or overruled because the Court has

already considered, evaluated, and disposed of these and similar filings. (*See Carter I,* ECF No.

55; Sept. 18, 2017 Mem. Op, ECF No. 36; Sept. 18, 2017 Order, ECF No. 37.)

Lewis and Mary's Motions to Dismiss for Lack of Subject Matter Jurisdiction are

frivolous and assert arguments that are without recognizable and persuasive legal authority.

These motions raise arguments previously considered and rejected by the Court. Consequently,

the Court will deny Lewis and Mary's Motions to Dismiss for Lack of Subject Matter

Jurisdiction. (ECF Nos. 62, 73, 75, 81.)

Lewis's multiple objections are likewise improperly duplicative, frivolous, and

contumacious. They each raise arguments already considered and rejected by the Court

numerous times. As stated above, Lewis's first objection fails to raise a material fact that would

preclude the entry of summary judgment. To the extent necessary, the Court will deny and

overrule Lewis's First Objection. (ECF No. 80.)

Lewis's Second Objection raises substantially the same issues and arguments as Lewis's

First Objection. He argues throughout that the United States must "specifically identify all three

required elements of the subject-matter jurisdiction of the court that can be taken over the

action," (Lewis's Second Obj. 3, ECF No. 85), and until the United States does so, "further

proceedings in this civil action are now procedurally barred by the Federal Rules of Civil

---

[23] Lewis' First Objection is also nearly identical to Lewis and Mary's previous "Objection to the Mischaracterization of Defendant's Position by Plaintiff." (ECF No. 74.) For this reason, the Court's analysis of the arguments contained within the pleadings found at ECF Numbers 74, 80, and 81 is the same.

Procedure from going forward," (*id.* at 8). Lewis's Second Objection is procedurally improper, duplicative, and frivolous. Even were it timely filed and procedurally proper, it creates no genuine issue of material fact about whether the United States is entitled to foreclose on Lewis's properties, and it identifies no facts as yet undiscovered that could aid Lewis in opposing summary judgment. To the extent necessary, the Court will overrule Lewis's Second Objection. (ECF No. 85.)

In denying Lewis's position, the Court observes that it has afforded Carter more-than-due process. Not only did the Court make written findings in *Carter I* and in the case at bar explaining the deficiencies in detail, the Court held a hearing in this case on February 26, 2018 during which Lewis appeared. (*See* ECF No. 77.) Lewis offered evidence and argued. (*Id.*) As part of the February 26, 2018 hearing, the Court required the United States to restate its positions on the record so Lewis could hear them directly. (Tr. 11–13, ECF No. 79.) The Court reminded Lewis about its earlier written opinion in this case rejecting his theories about taxation or other legal matters. (Tr. 13–14; Sept. 18, 2017 Mem. Op., ECF No. 36.) The Court read portions of the earlier opinion to Lewis, saying in person his arguments lacked merit. (Tr. 13–14.) Then the Court afforded twenty-one days to allow Lewis to present additional argument, should he have any. (Feb. 27, 2018 Order 1, ECF No. 78.) That time has passed.

On April 6, 2018, Lewis filed Lewis's Counterclaim. (ECF No. 86.) Lewis purports to bring a counterclaim against the "United States of America, Jeff Sessions, DOJ, as Attorney General; Deborah K. Hurst; W. Stark; [and,] Hannah Lauck." (Lewis's Counterclaim 1, ECF No. 86.) Lewis identifies no federal or local rule allowing him to assert a counterclaim more than five months after his October 2, 2017 deadline for filing an answer. *See* Fed. R. Civ. P. 13

(governing counterclaims and crossclaims).  To the extent necessary, the Court will dismiss Lewis's Counterclaim as untimely and improperly filed.

## V.  Conclusion

On this ample record and for the foregoing reasons, the Court will:  (1) vacate its entry of default against Mary; (2) to the extent necessary, overrule or deny all of Lewis's and Mary's frivolous and duplicative motions and objections, (ECF Nos. 62, 63, 64, 73, 74, 75, 80, 81, and 85); (3) grant Mary's Motion to Take Judicial Notice, (ECF No. 72); (4) dismiss Lewis's Counterclaim, (ECF No. 86); (3) grant summary judgment against Lewis in favor of the United States, (ECF No. 65); (4) foreclose the United States' tax liens against Lewis; (5) enter an order authorizing the United States to sell certain real property owned by Lewis; and (6) dismiss this case in its entirety.

An appropriate Order shall issue.

/s/

M. Hannah Lauck
United States District Judge

Date: 9/12/18
Richmond, Virginia